## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Peter F. Barry, an individual, on behalf of himself and all others similarly situated, | Case No. 21-cv-1312 |
| Plaintiff, | |
| v. | **COMPLAINT** **CLASS ACTION** |
| Texas Market Research Group, L.L.C., | |
| Defendant. | **Jury Trial Demanded** |

### *Introduction*

1.    Plaintiff Peter F. Barry, an individual ("Plaintiff"), individually and on behalf of all others similarly situated, make the following allegations and claims Defendant, upon personal knowledge, investigation of their counsel, and on information and belief.

2.    This action seeks redress on a class wide basis for business practices that violate the Telephone Consumer Protection Act of 1991, 47 U.S.C. § 227 ("TCPA").

3.    This Court has jurisdiction to grant the relief sought by Plaintiff pursuant to 47 U.S.C. § 227(b) and 28 U.S.C. § 1331.

4.    Venue is proper in this district as a substantial part of the events giving rise to Plaintiff's claims as well as the class wide claims occurred in this District.

*Parties*

5.   Plaintiff is, and at all times mentioned herein was, a citizen and resident of the County of Ramsey, State of Minnesota and a "person" as defined by 47 U.S.C. § 153 (39).

6.   Plaintiff is the regular and exclusive user of a cellular telephone with service provided by Cricket and registered in his name, namely, (651) 592-8800 ("Cellular Telephone Number").

7.   Pursuant to the terms of service, Plaintiff account is charged to his Cellular Telephone Number for each call within the meaning of 47 U.S.C. § 227(b)(1)(A)(iii).

8.   Plaintiff received at least one telephone call from Defendant on his Cellular Telephone Number.

9.   Defendant Texas Market Research Group, L.L.C., also doing business as Reconnaissance Market Research and/or ReconMR, ("Defendant") is a data collection research firm that is a foreign corporation incorporated in Texas, with an agent of process named Tod C. Higginbotham, located at and doing business from an address of 135 S. Guadalupe, San Marcos, Texas 78666.

10.   According to Defendant's website:

> ReconMR is a data collection research firm headquartered in the Austin-San Marcos, TX metropolitan area. ReconMR has experience dating back to the 1960's and has conducted thousands of research projects for a wide range of clients, including state and municipal entities, universities, media outlets, political pollsters, public policy scientists, retail corporations, high tech companies, and more. We're backed by a staff of experienced managers, programmers, and

supervisors who oversee 1000+ professionally-trained interviewers, including a full complement of bilingual interviewers.

ReconMR's headquarters and one of five call center operations is located 15 minutes South of Austin, Texas and two blocks away from Texas State University, with 35,000+ students currently enrolled. Hispanics comprise 28% of student population and 32% of the Austin-San Marcos metro area population. ReconMR has had a presence in San Marcos since 1999 under its sister company's name, CRI. In 2004, the CRI call center was relocated to an 8,300 sq. ft. purchased facility that currently accommodates administrative offices and 108 call center stations. ReconMR has another 225 [Computer Assisted Telephone Interviewing] stations in Bryan/College Station (home of TX A&M University), another 96 CATI stations in Houston, TX, another 96 CATI stations in San Antonio, TX and yet another in Corpus Christi with 115 stations.

https://www.reconmr.com/about-reconmr/ (last accessed March 22, 2021).

### *Facts*

11. Plaintiff is the regular and exclusive user of a cellular telephone service on the Cellular Telephone Number which he first obtained on or around 2001.

12. On or about October 2, 2019, Plaintiff received the call from Defendant on his Cellular Telephone Number (hereinafter referred to as the "Call").

13. When Plaintiff first answered the Call, there was a click, a pause and silence initially on the line indicating that the call was automated in nature.

14. The caller ID on Plaintiff's cell phone identified the caller's number as 1 (612) 540-1508.

15. After a live person employed by Defendant finally got onto the Call with Plaintiff, she thereafter identified herself as "Sanaa" and indicated that the call was being recorded.

16.     Sanaa stated that she was conducting a survey on behalf of the Minnesota Department of Health.

17.     During the course of the 54-minute Call, Sanaa explained to the Plaintiff that his Cellular Telephone Number had been randomly selected by Defendant to receive this Call made on behalf of the University of Minnesota and the State of Minnesota as part of some sort of an insurance access survey done in conjunction with the Minnesota Department of Health.

18.     At no time did Plaintiff provide his Cellular Telephone Number to Defendant, through any medium or at any time, nor did Plaintiff ever consent to the receipt of automated calls to his Cellular Telephone Number.

19.     When Plaintiff asked Sanaa how it was that she had dialed his Cellular Telephone Number, she explained that she did not know what telephone number was called by her computer and that she simply received the call on her system after it had connected her to Plaintiff.

20.     Upon good faith information and belief, Plaintiff is informed and believes that Defendant obtained his cellular telephone number through a process called "random digit dialing."

21.     During the Call, Plaintiff was provided with contact information for a contact person at the University of Minnesota who was overseeing the "Minnesota Health Access Survey" for which Defendant was making automated calls.

22.    According to an October 4, 2019 email later received from this contact person, "The MN Health Access Survey **sample is based on a random digit dial data base that includes landlines and cellphone numbers**." (Bold underline added.)

23.    Random digit dialing is a common practice used in the survey industry whereby telephone numbers are generated at random for the purpose of identifying and targeting a random selection of individuals for participation in statistical surveys.

24.    According to the Geopoll website, "Random digit dialing or RDD is a type of probability sampling in which phone numbers are randomly generated using a software system and used to create the sample for a research project." https://www.geopoll.com/blog/what-is-random-digit-dialing/ (last accessed March 22, 2021).

25.    According to the federal government, "Random digit dialing (RDD) generates a pure random sample and provides the advantage of including unlisted phone numbers, as well as numbers which are too new to be listed." https://www.science.gov/topicpages/r/random+telephone+survey.html (last accessed March 22, 2021.)

26.    According to the Minnesota Department of Health's website:

Minnesotans from more than 11,000 households will participate in the study. **Since 2009, the survey has included both cellular and landline phones in the sample.** Beginning in 2019, households are also being contacted by mail.

The size of the survey has varied over time. It includes responses from between 9,700 and 27,000 households between 2001 and 2017. Since 2009, the survey has targeted around 11,000 total respondents, with 12,436 responding in 2017.

https://www.health.state.mn.us/data/economics/hasurvey/index.html (last accessed March 22, 2021) (bold underline added).

27.  The random digit dialed Call that the Plaintiff received from Defendant was placed using an automatic telephone dialing system ("ATDS") as defined by 47 U.S.C. § 227(a)(1).  See *Facebook, Inc. v. Duguid,* No. 19-511, 2021 WL 1215717 (U.S. Apr. 1, 2021).

28.  This ATDS used by Defendant to call Plaintiff had a random digit dialer with the capacity to store or produce telephone numbers to be called, using a random or sequential number generator.

29.  Defendant did not have Plaintiff's express consent to call his cell phone using an ATDS.

30.  Defendant's regular business practices include making repeated telephone calls to persons using an ATDS that employs random digit dialing technology.

31.  In 1991, Congress enacted the TCPA in response to a growing number of consumer complaints regarding certain telemarketing and debt collection practices. The TCPA regulates, *inter alia*, the use of automated dialing systems. Specifically, section 227(b)(1)(A)(iii) prohibits the use of autodialers to make any call to a wireless number in the absence of an emergency or the prior express consent of the called party. The TCPA's definition of an automatic telephone dialing system includes a "predictive dialer." *Soppet v. Enhanced Recovery Co., LLC*, 679 F.3d 637, 638-9 (7th Cir. 2012).

32.   According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient. The FCC also recognized that wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used. *Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG Docket No. 02-278, Report and Order, 18 FCC Rcd. 14014 (2003).

33.   The FCC "emphasize[d] that prior express consent is deemed to be granted only if the wireless number was provided by the consumer to the creditor, and that such number was provided during the transaction that resulted in the debt owed." *FCC Declaratory Ruling*, 23 F.C.C.R. at 564-65 (¶10).

34.   Under the TCPA and pursuant to the FCC's January 2008 Declaratory Ruling, the burden is on Defendant to demonstrate that Plaintiff gave his express consent to Defendant to use an autodialer to call his wireless cellular telephone within the meaning of the statute.  *See FCC Declaratory Ruling*, 23 F.C.C.R. at 565 (¶ 10).

35.   Plaintiff never listed his Cellular Telephone Number in or on any documents during any transaction with Defendant, nor did he subsequently give his express consent to receive calls on his Cellular Telephone Number.

36.   By calling Plaintiff on his Cellular Telephone Number using an ATDS and without his consent, Defendant violated 47 U.S.C. § 227(b).

### *Class Action Allegations*

37.    Plaintiff brings this class action pursuant to Federal Rule of Civil Procedure 23 on

behalf of himself and on behalf of all others similarly situated.

38.    The proposed Class that Plaintiff seeks to represent is defined as follows:

> All persons who had or have a number assigned to a cellular telephone
> service, which number was called by Defendant using an automatic
> telephone dialing system and/or an artificial or prerecorded voice in
> the four years prior to filing of this action. Excluded from the class
> are persons who Defendant called for emergency purposes and
> persons who voluntarily provided their cellular telephone numbers to
> Defendant.

39.    Collectively, these persons will be referred to as "Class members."  Plaintiff

represents and is a member of the Class. Excluded from the Class are Defendant and

any entities in which Defendant, or its subsidiaries or affiliates, have a controlling

interest, Defendant's agents and employees, the judicial officer to whom this action

is assigned and any member of the court staff and immediate family. Also excluded

are claims for personal injury, wrongful death, and emotional distress.

40.    Plaintiff does not know the exact number of members in the Class, but based upon

Defendant's public statements regarding its business in the United States and

investigation of their counsel, Plaintiff reasonably believes that Class members

number in the thousands, if not more.

41.    There are questions of law and fact common to the members of the Class that

predominate over any questions affecting only individual members, including,

whether Defendant made any call (other than a call made for emergency purposes

or made with the prior express consent of the called party) using any automatic

telephone dialing system and/or an artificial or prerecorded voice to any telephone number assigned to a cellular telephone service in violation of the TCPA.

42.    Plaintiff's claims are typical of the claims of the members of the Class. Plaintiff does not have any interests antagonistic to those of the Class, and Defendant has no defenses unique to Plaintiff.

43.    Plaintiff will fairly and adequately protect the interests of the Class and has retained attorneys experienced in class and complex litigation.

44.    A class action is superior to all other available methods for the fair and efficient adjudication of the controversy for the following reasons:

    a.    It is economically impractical for members of the Class to prosecute individual actions;

    b.    The Class is readily definable; and

    c.    Prosecution as a class action will eliminate the possibility of repetitious litigation.

45.    A class action will cause an orderly and expeditious administration of the claims of the Class. Economies of time, effort, and expense will be fostered, and uniformity of decisions will be ensured.

46.    Class wide relief is essential to compel Defendant to comply with the TCPA. The interest of Class members in individually controlling the prosecution of separate claims against Defendant is small because the statutory damages in an individual action for violation of the TCPA are small. Management of these claims is likely to present significantly fewer difficulties than are presented in many class claims

because the calls at issue are all automated and the Class members, by definition, did not provide the prior express consent required under the statute to authorize calls to their cellular telephones.

47. Defendant has acted on grounds generally applicable to the Class, thereby making final injunctive relief and corresponding declaratory relief with the respect to the Class as a whole appropriate. Moreover, the TCPA violations complained of herein are substantially likely to continue in the future if an injunction is not entered.

### First Claim for Relief

48. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

49. The foregoing act and omissions of Defendant constitutes numerous and multiple violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

50. As a result of Defendant's negligent violations of the TCPA, Plaintiff and Class members are entitled to an award of $500 in statutory damages for each and every call placed in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3)(B).

51. Plaintiff and all Class members are also entitled to and do seek injunctive relief prohibiting such negligent conduct that violates the TCPA by each Defendant in the future.

### Second Claim for Relief

52. Plaintiff re-alleges and incorporates by reference the above paragraphs as though set forth fully herein.

53.    The foregoing acts and omissions of Defendant constitutes numerous and multiple knowing or willful, or both, violations of the TCPA, including but not limited to each of the above-cited provisions of 47 U.S.C. § 227.

54.    As a result of Defendant's knowing and willful violations of the TCPA, Plaintiff and each member of the Class are entitled to treble damages of up to $1,500 for each and every call made in violation of the statute, pursuant to 47 U.S.C. § 227(b)(3).

55.    Plaintiff and Class members are also entitled to and do seek injunctive relief prohibiting such willful conduct that violates the TCPA by Defendant in the future.

### Jury Trial Demand

56.    Plaintiff demands a jury trial on each of the causes of action set forth above, including the amount of statutory damages.

### PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully prays that judgment be entered against Defendant for the following:

57.    An injunction against further violations;

58.    Damages pursuant to 47 U.S.C. § 227(b)(3) on a class-wide basis;

59.    Costs of litigation and reasonable attorneys' fees both as part of a common fund, if any, and pursuant to statute; and

60.    Such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated:      June 1, 2021


*s/Thomas J. Lyons, Jr.*

Thomas J. Lyons, Jr., Esq.
Minnesota Bar No. 0249646
CONSUMER JUSTICE CENTER, P.A.
367 Commerce Court
Vadnais Heights, MN 55127
(651) 770-9707 phone
(651) 704-0907 fax
tommy@consumerjusticecenter.com

Roberto Robledo, Esq.
California Bar No. 260041
(*To Be Admitted Pro Hac Vice*)
Law Office of Roberto Robledo
8033 Linda Vista Road, Suite 200
San Diego, CA 92111
(619) 500-6683 phone
(619) 810-2980 fax
roberto@robertorobledo.com

*ATTORNEYS FOR PLAINTIFF AND THE*
*PUTATIVE CLASS*